IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

RONALD J.W. CALHOUN,               )
                                   )
              Plaintiff,           )
                                   )
v.                                 )   Case No. CIV-20-149-RAW-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
              Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Ronald J.W. Calhoun (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 48 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a truck driver. Claimant alleges an inability to

work beginning March 6, 2016 due to limitations resulting from bipolar disorder, attention disorder, and intellectual disorders.

## Procedural History

On March 6, 2017, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On April 9, 2019, Administrative Law Judge ("ALJ") Bill Jones conducted an administrative hearing Fort Smith, Arkansas.  On July 29, 2019, the ALJ issued an unfavorable decision.  On March 30, 2020, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, he retained the RFC to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in failing to properly consider the limitations on Claimant's concentration,

persistence, and pace found by the consultative mental examiner. Claimant requests that this Court remand for the award of benefits.

### Consideration of the Evidence

In his decision, the ALJ determined Claimant suffered from the severe impairments of depression, anxiety, degenerative disc disease, and obesity. (Tr. 17). The ALJ concluded that Claimant retained the RFC to perform light work except that he was limited to simple, routine, repetitive tasks, involving only simple work-related decisions with few, if any, workplace changes and no more than incidental contact with co-workers and supervisors and no contact with the general public. (Tr. 21).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of power screwdriver operator, filing and closing machine tender, and compression molding machine tender. (Tr. 27). As a result, the ALJ found Claimant was not disabled from March 6, 2017 through the date of the decision. <u>Id</u>.

Claimant contends that the ALJ failed to properly consider the limitations found by Dr. Robert Spray, the consultative mental examiner. Dr. Spray evaluated Claimant on July 27, 2017 and authored a report with his findings. (Tr. 397-401). As a part

of his evaluation, Dr. Spray administered the Wechsler Adult
Intelligence Scale-IV test.  He found Claimant to have attained a
Full Scale IQ of 54 with index scores on Verbal Comprehension of
61, Perceptual Reasoning of 67, Working Memory of 55, and General
Ability of 60.  (Tr. 399).  Dr. Spray diagnosed Claimant with
Unspecified Anxiety Disorder, Severe; Unable to Rule Out
Intellectual Disability; and Other Specified Personality Disorder
with Antisocial and Avoidant Traits.  In areas of adaptive
functioning, Dr. Spray determined Claimant had difficulty with
activities of daily living due to physical pain after a motor
vehicle accident.  He can drive himself to the doctor if no one
is available to do it for him.  He does yard work although his
father mows his lawn.  His parents do his shopping.  He does not
handle his finances.  He sometimes goes to church.  (Tr. 400).

Claimant reads but has difficulty with comprehension.  He
watches television, does some of his laundry, messes with his dog,
and does some cooking and household chores, when he is not in pain.
Id.

Claimant gets along with his parents.  Dr. Spray noted,
however, that Claimant was agitated, aggravated, and irritable
with him during the evaluation.  Claimant avoids people although

he has a girlfriend. He stated that he had problems with loud noises. Id.

Dr. Spray found Claimant's speech articulation to be normal. He also found that the "Wechsler scores are of questionable validity because of [Claimant's] attitude during the exam. Because of this, I would not venture to guess his level of cognitive functioning." He also determined that Claimant's attention and concentration were poor. Claimant was easily frustrated and had difficulty persisting with tasks. Dr. Spray found Claimant would not be able to complete work-like tasks in a timely manner. Id.

Commenting on the validity of the testing, Dr. Spray once again stated that Claimant had difficulty persisting and was easily frustrated. He refused to do the Coding subtest. He was irritable and agitated, and often gave up prematurely. His test scores were of dubious validity. Dr. Spray concluded that Claimant showed no evidence of conscious malingering or exaggeration of symptoms. He could not manage his funds without assistance. Id.

The ALJ noted Dr. Spray's findings in administering the WAIS IV examination, including his conclusion that the test scores were

considered invalid because of Claimant's "attitude and increased agitation." He also noted Dr. Spray's diagnosis of a personality disorder with antisocial and avoidant traits. (Tr. 20).

The ALJ also discussed in some detail Dr. Spray's findings after the consultative examination as related herein. The ALJ concluded that Dr. Spray's opinion was entitled to "partial weight" "to the extent his diagnosis or findings were made based upon claimant's history, as he was noted to be a poor historian of treatment and symptoms. The claimant's mental impairments and symptoms thereof have been accommodated by his unskilled residual functional capacity set out herein." (Tr. 25).

Claimant's mental capacity was also evaluated by non-examining medical reviewers, Ryan Jones, Ph.D. and Laura Lochner, Ph.D., state agency psychologists. In reviewing Dr. Spray's evaluation, Dr. Jones noted that Dr. Spray "[o]pined attention and concentration are poor, clmt is easily frustrated and has difficulty persisting with tasks. He would not be able to complete work-like tasks in a timely manner. Would not be able to manage funds." He then concluded that Dr. Spray's "[o]pinions [were] given limited weight as ratings are reserved for commissioner and are based on limited information." (Tr. 73). In his evaluation

of September 6, 2017, Dr. Jones found Claimant's "ability to maintain attention and concentration for extended periods" to be "moderately limited", his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances", "ability to sustain an ordinary routine without special supervision", and "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" were "not significantly limited." (Tr. 77).

Dr. Lochner in her review of the evaluation reached the identical conclusions on Dr. Spray's opinions. (Tr. 91). She also reached the identical findings on limitations upon Claimant's concentration, attention, and persistence. (Tr. 94).

The ALJ must evaluate every medical opinion in the record and consider several factors in deciding the weight that should be given to any medical opinion. Salazar v. Barnhart, 468 F.3d 615, 625-626 (10th Cir. 2006)(citing 20 C.F.R. § 416.927(d)). The ALJ must "give good reasons" for the weight he ultimately assigns a medical opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted).

Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins v. Barnhart, 350 F.3d 1297, 1301 (quotations omitted).

In this case, the ALJ admittedly gave Dr. Spray's opinion "partial weight" to his "diagnosis or findings" with a curious and somewhat indecipherable reference to Claimant's history.  (Tr. 25).  It is impossible for this Court to determine which of Dr. Spray's diagnoses or findings to which the ALJ gave "partial weight".  Because of this lack of clarity, the ALJ cannot be found to have given "specific, legitimate reasons" for affording whatever weight he afforded the "diagnosis or findings."

Moreover, the ALJ's statement that Claimant's "mental impairments and symptoms" were "accommodated by his residual functional capacity" set out in the decision is starkly erroneous. The RFC reached in this case contains none of the limitations found by Dr. Stark related to deficits in concentration, attention, or persistence.  A restriction to "unskilled work" as that term is defined by Soc. Sec. R. 85-15 does not include the restrictions on

attention, concentration, persistence and the ability to perform work within an acceptable time frame found by Dr. Spray. *See* Jaramillo v. Colvin, 576 F. App'x 870, 875 (10th Cir. 2014). Additionally, this Court cannot ignore the Tenth Circuit's pronouncement that references in the RFC to work that was "unskilled, . . . just accounted for issues of skill transfer, not impairment of mental functions—which 'are not skills but, rather, general prerequisites for most work at any skill level.'" Chapo v. Astrue, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) quoting Wayland v. Chater, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996) (unpub.) (drawing on several published cases in noting restriction to unskilled jobs does not address mental impairment) and Craft v. Astrue, 539 F.3d 668, 677-78 (7th Cir. 2008) (holding limitation to unskilled work did not account for several effects of mental impairment). The inclusion of "unskilled work" in the RFC did not properly account for the specific mental restrictions found by Dr. Spray after examination.

The non-examining reviewers' conclusions do not rescue the ALJ's deficient decision. They only reject Dr. Spray's opinions because they invade upon matters reserved to Defendant. Certainly, restrictions in mental functioning such as attention,

11

concentration, and persistence are within the province of a mental health professional who examines a claimant.  The reviewers' sweeping pronouncement is not sufficient to reject Dr. Spray's conclusions.  On remand, the ALJ shall re-examine Dr. Spray's mental limitations and re-evaluate the RFC in light of those limitations.

While this Court has considered recommending that this case be remanded with instructions to award benefits as Claimant requests, tThis Court declines this invitation in favor of permitting the ALJ an opportunity to properly evaluate the facts and evidence in this case.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and

Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

 DATED this 13th day of September, 2021.

       _____
       KIMBERLY E. WEST
       UNITED STATES MAGISTRATE JUDGE